PHILLIPS CONSTRUCTION COM-PANY, Inc.

v.

The UNITED STATES.

No. 357-62.

United States Court of Claims.

March 17, 1967.

· James H. Mann, Washington, D. C., for plaintiff; H. Haywood Robbins, Charlotte, N. C., attorney of record; Scott W. Lucas, Friedman and Mann, Washington, D. C., of counsel.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before LARAMORE, Acting Chief Judge, and DURFEE, DAVIS, COLLINS and NICHOLS, Judges.

DURFEE, Judge.

Plaintiff, under a fixed price contract with defendant, erected at Myrtle Beach, South Carolina about 800 housing units under the authority of the Capehart Housing Act.[1] Because of adverse weather, the completion date for construction, originally established as February 6, 1959, was extended by three successive supplemental agreements through November 20, 1959. Plaintiff was required to pay additional interest for this extended period to its mortgagee bank on the money it borrowed to finance the project. For each time extension, plaintiff requested a change order for the additional interest costs. These requests were denied by both the Contracting Officer and the Armed Services Board of Contract Appeals on the ground that there was no statutory or contractual obligation for payment of interest by the United States. The Board did find that the delay in construction was due to weather conditions, that "[s]uch conditions delayed the work as well as running up the cost of construction", and that

---

1. 69 Stat. 651 et seq., 42 U.S.C. § 1594 et seq.; 12 U.S.C. § 1748 et seq.

"[t]here can be no doubt plaintiff has suffered a considerable loss."

Plaintiff now sues for $218,261.05 which it alleges is the additional amount of interest that it was required to pay the mortgagee bank pursuant to the supplemental extension agreements.

## I

Financing the construction of housing for military personnel under the Capehart Act[2] operated as follows: The lowest qualified bidder formed a corporation to which the Government leased certain lands where specified housing for military personnel was to be built for a fixed amount—an amount which covered all costs including both construction and permanent financing. The Government required the corporation to borrow the full amount of its costs and to secure this obligation by its note and a mortgage which was then guaranteed by the Government.[3] This arrangement specified that the mortgagor-builder should be liable for interest in a fixed amount covering the construction period specified in the contract. During the construction period the contractor was permitted to draw down such amounts under the loan as were approved by the Contracting Officer. From these amounts the bank deducted the interest specified for the construction period. At the end of the construction period it was provided that the Government should take over the full obligation under the mortgage note, and upon the completion of the project, the corporation's stock, escrowed during construction, was turned over to the Government.

## II

In the instant case, the changed condition forced an extension of the construction period. Consequently, during the extended construction period, interest in addition to that provided by the contract was charged to the contractor and deducted from the loan. The amount which the parties contemplated that the contractor should receive was thereby reduced and the contractor consequently suffered a loss.

Defendant points out that had plaintiff wished to construct the project with its own capital, instead of borrowing it, it would have incurred no interest expense during the construction period. That is, if plaintiff sought no loan advances until it actually completed the project, it would have had no funds outstanding upon which to pay interest. The accuracy of this statement cannot be disputed; however, the realities of this case show it to be of no use in resolving any issues. Defendant's hypothetical situation was not contemplated by the parties under either the contract involved or the Capehart Act. When plaintiff computed its bid for the total fixed cost of the project, it made allowance for the amount of interest the mortgagee bank would charge for the initial 480-day period of construction. When this period was extended, the additional interest paid by plaintiff to the mortgagee bank was an additional cost needed to complete the project as required by the contract. Granted that there was no contractual provision expressly binding the Government to pay interest before completion of the project. However, the Government was obligated to pay plaintiff the additional costs required by the mutual agreement to extend the contract period inasmuch as it knew that interest during construction was an approved and required part of the contract cost and must have known that the agreed in-

2. Title IV Housing Amendments of 1955, 42 U.S.C. § 1594, 69 Stat. 651.

3. Plaintiff's loan breaks down into component parts as follows:

| | |
|---|---|
| Myrtle Beach AFB Housing Inc | $4,009,800 |
| Myrtle Beach AFB Housing No. Two, Inc | 4,020,100 |
| Myrtle Beach AFB Housing No. Three, Inc | 3,873,100 |
| Total | 11,903,000 |

crease in time for completion of the contract would increase plaintiff's total cost of performing the contract, including increased cost of interest deducted by the bank from the loan proceeds.

Section 2516(a) of Title 28 of the United States Code does not prohibit the recovery of increased interest costs, in circumstances such as alleged here, in a Capehart Act contract. It was inherent in the scheme of that Act that the contractor would obtain private financing and pay interest, and interest costs were placed in the very same category as more tangible costs of construction. Plaintiff's contract, as we have said, embodied that position. 28 U.S.C. § 2516(a).[4]

### III

The Report and Advisory Opinion of the Armed Services Board of Contract Appeals included five cases: ASBCA Nos. 5831, 6052, 6332, 6334 and 6074 which were heard and decided jointly. The Board stated that it would consider the five appeals serially, but before doing so it found that:

> The overrun was not due to liberality on the part of the Government in granting time extensions or to the failure of the appellant to attack the work with zeal and overtime when ground conditions would permit. Both parties were anxious for completion—the appellant because the contract was for lump sum and included interest on mortgage loans for only 480 days and the Government due to the immediate need of houses for airmen, Myrtle Beach being a resort area where high rentals prevailed.

> The impediment was the quagmire conditions existing on the site for prolonged periods during construction. Such conditions delayed the work as

well as running up the costs of construction. There can be no doubt that the appellant has suffered a considerable loss.

> Housing units were placed upon built up pads. When they were under roof, some progress could be made regardless of wet conditions. As units were completed, the Government took beneficial occupancy ahead of the time the appellant finished its other required work in the mortgage areas.

The Board then considered No. 6332 and allowed extra construction expenses under Changed Conditions Provision 9(d)(2) of the contract. Citing John A. Johnson Contracting Corporation v. United States, 132 F.Supp. 698, 132 Ct. Cl. 645 (1955), the Board made the allowance "because the failure of the drainage system prescribed [by the Government] to disperse the water was a contributing cause of the quagmire in the flooded areas."

In considering the three interest cases (including 6074, the case now before us), the Board found that the extensions of time due to unduly severe weather were clearly authorized under Clause 11 of the contract, which however provided no additional relief beyond the agreed extension of time. The Board then concluded:

> Here we are concerned with interest as *a separate cost* in computing an adjustment under Clause 9 entitled Changes and Changed Conditions. On this, we recommend that the interest claim be denied.

> Clause 9 contemplated that the appellant would be compensated for the reasonable cost and expenses incident to changes.

> No provision was made for an increase in the cost of work *not changed*

---

4. This treatment of interest costs under the Capehart Act is in line with the approach followed with earlier legislation. See, e.g., War Minerals Relief Act (Dent Act) 40 Stat. 1272, amended 42 Stat. 322, 45 Stat. 1166, Wilbur v. United States ex rel. Chestatee Pyrites & Chemical Corporation, 284 U.S. 231, 52 S.Ct. 113, 76

L.Ed. 261 (1931); War Contract Hardship Claims Act (Lucas Act) 60 Stat. 902, Waxman v. United States, 112 F. Supp. 570, 125 Ct.Cl. 464 (1953), and Enjay Construction Co., War Contracts Hardship Claims Board (decided November 18, 1948).

or for the delay arising out of changes. [Emphasis supplied]

The mistake of the Board was in concluding that the cost of the work was *not changed.*· The Board had found a "Changed Condition" within the meaning of Clause 9(d) (2) of the Changed Condition Provision of the contract in ASBCA Case No. 6332. If the Board was correct in this finding, plaintiff should be entitled to judgment in the present ASBCA Case 6074. However, defendant has disputed the correctness of the Board's finding of a Changed Condition under ASBCA–6332. Accordingly, the case is remanded under Rule 47 for an initial determination as to whether the Board's finding in its decision on ASBCA Case 6332 that there was a "Changed Condition" under Provision 9 (d) (2) was arbitrary, capricious or not supported by substantial evidence.

If the Commissioner sustains this finding of the Board, then it follows that the delay and additional work required by this same "Changed Condition" also required the extension of time in the present case for completion of the contract. This would result in additional costs, including additional interest, to plaintiff for completion of the contract under the Changed Conditions Provision of the contract and the decision and findings of the Contracting Officer and of the Armed Services Board of Contract Appeals in the present case ASBCA No. 6074 would be arbitrary, capricious and not supported by substantial evidence. Plaintiff would then be entitled to judgment for the additional interest that was deducted by the mortgagee bank from the proceeds of the loan during the total extended period of the contract, with the amount of interest to be computed pursuant to Rule 47(c) (2).

Plaintiff's motion for summary judgment is granted, subject to a subsequent determination by the Trial Commissioner upholding the Board's finding of Changed Conditions in ASBCA Case No. 6332.