Ducker, Judge:
The claimant, The Baker & Hickey Company, was awarded a contract with the Stale Road Commission upon claimant’s low bid of $744,999.79 for the construction of a bridge over Gimlet Hollow, Cabell County, West Virginia, designated as Project No. 1-64-1(53)4, Contract No. 2, Cabell County Bridge No. 2227. Claimant claims herein damages totaling $35,435.74, alleging it was unreasonably delayed by the State Road Commission and prevented from performing the work under the contract. The claim is composed of two principal parts, the first being alleged damages suffered directly by the claimant in the sum of $18,795.35, and the second being alleged damages suffered by claimant’s subcontractor, The Vogt and Conant Company, which was to erect the steel of the bridge, in the sum of $16,640.39, for which sum the claimant says it is liable to the subcontractor and therefore the Road Commission is liable for said sum to the claimant. These claims were first filed as two separate claims, one by the claimant and the other by the subcontractor, but inasmuch as there was no privity of contract between the subcontractor and the State, the claimant consolidated the two claims into one claim in its name.
*196 The contract provided for a period of four hundred working days for the completion'of the contract. The work was begun on May 4, 1964, and was completed on June 23, 1966. The four hundred working days expired on May 25, 1966, but no default was claimed by the Road Commission which had shut the work down on a stop order dated July 20, 1964 which remained in effect until May 26,1965, a period of approximately ten months, due to a land or ground slippage on the west bank of Gimlet Hollow affecting No. 1 abuttment and No. 1 Pier. The cause of earth slippage was not known or at least none of the witnesses seem to know. It was, after long delay, rectified by the contractor of the work on the adjacent part of the project. The Road Commission explained the delay on the basis that time was necessary to study the slide in order to determine its cause before attempting to remedy the situation. The claimant alleges that the ten month delay was unnecessary and that its damages resulted from such delay, alleging that it could have finished the work under the contract earlier and not had the additional costs of equipment costs, rentals and labor.
The claimant maintains the position that the 400 day provision is one only to penalize the contractor if the contractor does not finish the work as specified. We cannot subscribe to that theory, as the Road Commission fixes such time as the reasonable period within which the work should and must be completed so that the whole project shall be available to the public. If the contractor can complete his work sooner and profit thereby, he is privileged to but not required to do so. As to things which occur such as the earth slide or slippage in this case, the State has not warranted to the contractor that such will not occur and the contractor must take such probabilities into his account, except that he should not be charged with working days while such exist. Section 1.8.4 of the Specifications-Roads and Bridges, of the State Road Commission, which was made a part of the contract involved in this case, provides as follows:
“The Engineer shall have authority to suspend the work, wholly or in part, for such period or periods as he may deem necessary, due to unsuitable weather, or other conditions considered unfavorable for suitable prosecution of the work, or for such time as may be found necessary due to failure of the Contractor to *197 carry out orders given or perform any or all provisions of the Contract. The suspension shall not constitute grounds for claim for damages or extra compensation by the Contractor. If it should become necessary to stop work for an indefinite period the Contractor shall store all materials so that they will not obstruct or impede the traveling public unnecessarily or became damaged. He shall take all precautions necessary to prevent damage to, or deterioration of, the work performed, provide suitable drainage of the roadway by opening ditches, shoulders, drains, etc., and erect temporary structures where necessary. The Contractor shall not suspend the work without proper authority.”
We find nothing in the evidence questioning the authority or the propriety of the suspension of the work under this contract, except that the claimant says that the period of the suspension was unreasonable and unjustified. How unreasonable or unjustified is not clear, and it must be remembered that by far the larger part of the period of suspension was during the winter months. Claimant, while questioning the period of suspension, offered no clear proof that the period of the suspension should have been shortened or that the cause of the earth movement could have been earlier determined and corrected. Who can say whether some earlier elimination of the earth slippage would have been successful, and if not successful what other damage may have resulted. It was within the province and duty of the Road Commission to decide such question and to stop work under the contract until it was certain as to what steps should be taken. It is indeed unfortunate when such things happen, but we don’t see where the State has become a guarantor against such an occurrence. We do not wish to absolve the Road Commission of any negligence, but delay alone as in this instance does not prove negligence.
The claimant says that it was delayed approximately ten months in the performance of the contract all on account of an unreasonable period of the stop order. It does not attempt to show what would have been a reasonable period under the circumstances. On the contrary, the State introduced evidence which showed a considerable amount of work was done by the claimant prior to winter and during the said ten month period. The claimant’s own total alleged damages amount to $18,795.35 *198 which if we would consider on a monthly basis would be $1,879.53 per month. As is hereafter shown, the steel work for the bridge completion was delayed by the Road Commission for approximately two months beyond the four hundred day working period by its action in giving incorrect information for the delivery of the steel. Because of such action, we are of the opinion that two months costs can be fairly charged to the Road Commission, and we can conceive of no other equitable manner to determine such damage than to allow for such two months of the average monthly cost of $1,879.53, which amounts to $3,759.06.
The second part of this claim which relates to the delay in the erection of the steel caused by the damaging act on the part of a Road Commission official in designating the time when the steel could be erected from Abutment No. 1 and on and to Pier No. 1. We are not satisfied from the evidence that there is unquestionable liability on the part of the claimant to the subcontractor, The Vogt & Conant Company, for any damages claimed by the latter. No contract between such parties was offered in evidence and the proof is that the subcontractor claimed it was billing the contractor for the claim and the contractor admitted such liability for the purpose of this claim. We have serious doubts as to whether this could bar the contractor from later denying liability to the subcontractor. However, this Court does not wish to be strictly technical on this point in view of the fact that some injustice has been done by the act of the Road Commission in so specifically designating a day when the steel work could be done on Pier No. 1.
Early in January 1965 the Road Commission advised claimant that No. 1 Pier would be released to claimant for work by March 1, but it was not so released until May 26, 1965, a date approximately three months later. Relying upon such specific information claimant had its subcontractor ship the steel which had been on order for many months to the bridge location and upon finding the pier not ready the subcontractor had to store the same, requiring an additional handling of the steel and the cleaning thereof after storage as well as some additional charges. The extra costs and expenses claimed in this connection consist of (1) labor and overhead $4,406.26; (2) premium *199 time $113.90; (3) idle equipment $7,347.10; (4) truck crane $1,700.00; (5) cost of cleaning steel $574.18; (6) Business & Occupation Tax of $377.49; (7) $201.23 extra zinc pouring costs; and (8) labor escalation costs, travel and trucking charges $1,920.23, making a grand total of $16,640.39.
Then of the above items claimed as damages the question for this Court is which of them in our opinion should be allowed. As to the zinc lead matter, we find no justification for allowances as such claim is not sustained by the proof. Nor are we satisfied about equipment rental or other claims based on idleness or loss of opportunity to the claimant to otherwise use. The record is not clear as to what use might have been made of such equipment but for the delay, although claimant says it was not practicable to move the equipment. We cannot conclude that there was an obligation on the part of the Road Commission to compensate for any such hazard, even though the delay may have been a material factor in the matter. The contractor and subcontractor were required to abide by the provisions of the hereinbefore quoted section 1.8.4 of the specifications and delays reasonably justified are hazards assumed by contractors, otherwise the provisions are practically meaningless. We do, however, feel constrained to and do consider valid the extra labor and overhead costs of $4,406.26, the premium time of $113.90, the cost of cleaning steel of $574.18, the Business & Occupation Tax of $377.49 and the labor escalation costs of $1,920.23, making a total of $7,392.06.
In view of all the facts and circumstances and an effort to find an equitable basis to adjust the controversial claims herein, we are of the opinion that the claimant should be awarded the sum of $3,759.06 for the loss incurred by it, and the sum of $7,392.06 for the loss occasioned to claimant’s subcontractor, The Vogt & Conant Company, making a total award for both claims of $11,151.12, and we direct that payment be made to the contractor and subcontractor in said respective amounts.
Award of $11,151.12.