WALLACE, JUDGE:
The claimant filed its claim for an equitable adjustment against the respondent in the amount of $1,393,814.53 for costs incurred in the execution of its contract with the respondent, which costs were due to excessive and unforeseen subsurface material that was unsatisfactory for use as embankment foundation.
The claimant was the successful bidder on respondent’s project 483(15). This project was for the construction of a portion of what is now Route 48, and covered approximately 2 1/2 miles of road in the mountains of Preston County, West Virginia, in the vicinity of Cooper’s Rock State Forest near Morgantown.
It was contended by the claimant that the site conditions indicated in the contract differed materially from the conditions actually encountered in three areas designated “claimed areas”. These areas were identified at the hearing as:
(1) from station 149a50 to 154a50, for a distance of 1500 ft.
(2) from, station 228a50 to 240a00, for a distance of 1150 ft.
(3a) from station 251a50 to 262a00, for a distance of 1050 ft.
(3b) from station 262a50 to 268a50, for a distance of 600 ft.
*2 Each of the claimed areas was in a valley where fill benches had to be constructed to support the fill for the highway. It had been anticipated, from the design features and boring information, that the contract indicated that the fill bench areas would be constructed to a depth in reasonably close conformity with the plans.
The claimant encountered unforeseeable subsurface conditions and material. The material was not suitable for embankment foundation. In order to reach rock or shale base, it was necessary to excavate to a greater depth and over a greater length than that indicated in the contract. The excavation to a greater depth resulted in costs not anticipated in the bid price. An increased amount of subsurface water was encountered, which required continuous pumping of the water from the claimed areas. High production equipment could not be used to its best advantage in the congested area. Additional equipment was required, and it became necessary for bulldozers to push hauling units out of the claimed areas when such units were unable to move under their own power. These factors interrupted the claimant’s planned schedule.
The claimant contends that the difficulties encountered entitled it to an upward equitable adjustment in the contract price under the terms of the “changed condition clause” or the “differing site condition clause” in Section 104.2 of the Standard Specifications of 1968. This section provides in part:
“Should the Contractor encounter or the Commission discover during the progress of the work subsurface or latent physical conditions at the site differing materially from those indicated in the contract, or unknown physical conditions at the site of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract, the Engineer shall be notified in writing of such conditions; and if the Engineer finds the conditions do materially differ and cause an increase or decrease in the cost of, or the time required for performance of the contract, an equitable adjustment will be made and the contract modified in writing accordingly.”
The respondent relies on another portion of Section 104.2 of the Standard Specifications of 1968, which provides:
*3 “The Commission reserves the right to make alterations in the Plans or in the quantities of work as may be necessary or desireable at any time either before or during the work under the Contract. Such alterations shall not be considered as a waiver of any conditions of the Contract nor invalidate any of the provisions thereof, provided such alterations do not decrease or increase the total cost of the project more than twenty-five percent, based on the original Contract quantites and the unit bid prices, and provided further that such alterations do not result in an increase or decrease of more than twenty-five percent in quantity of any one major Contract item
The difference between the original bid quantity of unclassified excavation and the quantity excavated was 4.4 percent. The respondent contends that since the above-quoted section requires a material difference of more than twenty-five percent in the quantity of a major item before there can be an adjustment in the contract price, the claimant is not entitled to an equitable adjustment.
Regardless of the fact that the quantity excavated was only 4.4 percent in excess of the original bid quantity to be excavated, the Court finds that a changed or different site condition existed. The crux of this claim is not the quantity of that excavated, but rather, the additional expenses required by the changed conditions not anticipated in the contract. The claimant had the right to rely upon the plans furnished by the respondent, and the plans should have been corrected to compensate for the extra expense incurred.
According to the Standard Specifications, and under the terms of the contract, the claimant was required to give the Engineer written notice that it intended to make claim for additional compensation in the form of an equitable adjustment due to differing site conditions. The contract further provides that such notice shall be given before work is commenced in the claimed area so that the Engineer is afforded the opportunity for keeping strict account of the actual cost. Failure to comply with this provision under the contract is to be considered a waiver by the claimant or contractor of any claim for additional compensation.
In this case, the claimant gave written notice by letter dated June 15,1971, and received by the respondent on June 17,1971. This was approximately two months after the claimant contends it encountered differing site conditions. John W. Baltes, of the *4 claimant company, testified that when a rock or shale base was not reached at a point anticipated under the contract plans, excavation was continued in an attempt to reach a solid base. At that time, it was not anticipated that there would be a changed site condition which would necessitate a claim for an equitable adjustment in the contract price. As soon as it became apparent that a substantial changed condition existed, the notice seeking an adjustment was given. This seems to the Court to be a feasible and acceptable explanation of the two-month delay in the notification to the respondent.
By reason of the changed site condition, the claimant incurred extra expense not contemplated under the contract. The claimant, in support of its claim, contends that it incurred additional expense and time in the following areas:
1. Additional cost of excavation and embankment construction.
2. Additional cost of excavation and equipment standby.
3. Additional cost of concrete paving equipment standby.
4. Additional cost of support equipment.
5. Additional cost of construction, maintenance, and removal of ramps and hard roads.
6. Additional cost of pumping and dewatering.
7. Additional cost of select rock fill.
8. Additional cost of drainage work.
9. Additional cost of work performed in 1973 due to price increases.
10.Additional cost of financing the added costs incurred in connection with performance of the contract.
Before discussing the claimed items of damages, it is necessary that the Court consider the motion made by the claimant at the close of the testimony that, in the event the Court found a changed condition did occur, the parties be permitted to negotiate the matter of the quantum of recovery, which motion the Court sustains, subject to the guidelines herein set forth. It is the opinion of the Court that all matters claimed by A. J. Baltes, Inc. are not recoverable, and consideration must be given to applicable laws governing recovery under a changed conditions clause.
*5 As a general rule, where the conditions encountered during excavation differ materially from those indicated by the plans and no fault in the preparation of the borings, drawings, or plans is proved, the remedies available under a standard changed conditions clause are limited to an equitable adjustment, non-assessment of liquidated damages, and an extension of time to complete the project. Jefferson Construction Company v. United States, 392 F.2d 1006 (1968). This limited scope of recovery, known as the “Rice doctrine”, was established by the United States Supreme Court in a series of cases beginning with United States v. Rice, 317 U.S. 61 (1942); United States v. Blair, 321 U.S. 730 (1944); United States v. Foley, Co., 329 U.S. 64 (1946). In Rice and those following, the Supreme Court was required to interpret and define the “changed conditions” clause in government contracts, which by the admission of all parties is virtually identical to Section 104.2 of the Standard Specifications quoted herein. Recovery was confined to additional costs due to structural changes required by the unexpected conditions, and to an extension of time for completion with an immunity from otherwise applicable liquidated damages. Recovery was denied for “.. .consequential damages which might flow from delay taken care of in the ‘difference of time’ provision.” (Rice, supra, at 67) It is unnecessary for this Court to review the history of the “Rice” doctrine and the exceptions attached since its promulgation; it is sufficient to note that when the delay complained of is not caused by the governmental agency, the doctrine is fully applicable and controlling. United Contractors v. United States, 368 F.2d 585, 177 U.S. Ct.Cl. 151 (1966).
Based upon the record, the Court is of the opinion that the respondent was not negligent in the preparation of boring data or other design specifications provided to all bidders on the project, nor that the respondent intentionally misrepresented anticipated subsurface conditions. In support of the claim for delay-caused damages, the claimant relies heavily upon the cases of Nolan Brothers, Inc. v. United States, 437 F.2d 1371 (1974), L. L. Hall Construction Co. v. United States, 379 F.2d 599 (1966), and Laburnum Construction Corp. v. United States, 325 F.2d 451 (1963). In each of the above cases, damages resulting from delays were recoverable when it was shown that the government was responsible for the delay. Recovery for damages due to idle equipment was allowed in Nolan, supra, when the government terminated the contract for its own convenience. In Hall, supra, the *6 contractor was compensated for the cost of idle equipment in a breach of contract suit because of the failure of the defendant to make available as per contract the necessary runways for the timely completion of the plaintiffs work. Likewise, in Laburnum, supra, failure by the government to correct faulty specifications caused the complained of delay, and the plaintiff suffered damages due to the idleness of equipment which were recovered in a breach of contract action. As noted by the court in Hall, supra, at 563, the government “.. .is not liable for delays which it did not cause, over which it had no control, or delays encountered by a contractor notwithstanding diligence in performance of its responsibilites under the contract.”
In the case of Jefferson, supra, the government prepared design specifications based upon fifteen borings conducted at the project site. These proved to be erroneous, and resulted in substantial undercutting and delays. After being awarded an equitable adjustment based upon the “Rice doctrine”, the plaintiff sought recovery for delay-caused damages. In denying recovery, the court held that:
“In the absence of proof of some act or omission from which we can deduce that defendant is at fault we cannot conclude that there has been a breach within the Laburnum exception and, therefore, recovery is limited to the remedies provided for under the contract.” Jefferson, supra, at 1015.
In the instant case, we are presented with a claim for an equitable adjustment as provided for by the contract rather than a breach of contract action wherein the government is shown to be at fault or for recovery for a governmentally induced unreasonable delay. Respondent is liable for such damages only when it is shown to be responsible for the complained of delays. Accordingly, the claimant cannot recover damages from delays not caused by the respondent.
In determing the amount of recovery under a “changed conditions clause”, there are two standard techniques for demonstrating cost incurred as a result of the unanticipated condition. The first method, or “actual cost” theory, is based on a daily cost analysis of the additional expenses required by the changed condition.
The second method of computation is the difference between what it cost to do the work and what it would have cost if the *7 unforeseen conditions had not been encounted. Kaiser Indus. Corp. v. United States, 340 F.2d 322, 337 (Ct. Cl. 1965). The difficulty in using this more speculative method is that it is premised upon a finding that but for the changed condition, the contractor would have rendered a timely performance. This Court is unable to make that determination in this instance. The result is that a contractor, who has submitted a low bid which would have possibly resulted in a net loss had not the changed condition been encountered, is able to recoup a windfall gain under the comparison cost theory. This is not the purpose of the equitable adjustment under Standard Specification 104.2. While not unmindful, of the inherent difficulties in computation, the Court finds that the “actual cost” theory should be the appropriate measure in this case.
The recoverable items of cost must be realistically confined to the additional cost incurred by the claimant, and which were directly and proximately caused by the changed conditions. Expenses which the contractor would have been required to expend in any event had no changed condition occurred are not compensable as part of an equitable adjustment. Dale Ingram, Inc. v. United States, 475 F.2d 1177 (Ct. Cl. 1973).
Undoubtedly, the unanticipated condition caused expense to the claimant not contemplated in the original contract bid price. The claimant was required to excavate at substantially greater depths than indicated in the contract and at a substantial increase in both labor and equipment costs. This excavation was performed in narrow valleys caused the claimant to change radically the normal method of operation and to adopt more expensive and specialized methods of work. Continued excavation necessitated a constant flux of establishment and relocation of haul roads and ramps. Water conditions at the base of the excavations required unanticipated and costly pumping and drainage operations. In view of the conditions encountered, the claimant was forced to utilize a select rock fill at increased labor and equipment costs. All of the above are recoverable costs directly attributable to the changed condition and should be included in an equitable adjustment. Care must be taken to avoid duplications and overlaps, and recovery limited to those damages which claimant can prove to have been directly and proximately caused by the changed condition. In particular, the evidence concerning additional equipment appeared suspect. As the court in Lowder v. North Carolina State Highway Comm’n., 217 S.E.2d 682, 700 (1975) noted:
*8 “To report that 36 machines are on a job site on a given day is unsatisfactory. It would be better practice to report not only the number of machines on the job, but also the number of machines operating, the task each performs, and the length of time each operates. The product of that kind of record keeping is more likely to bear the earmarks of reliability.”
Judgment decisions by the contractor to stockpile equipment on the job site do not necessarily constitute costs recoverable under an equitable adjustment.
In each of the claimed items of damages, the claimant has include a 9% allowance for overhead, a 10% allowance for profit, and a 2% allowance for anticipated Business and Occupation taxes. This Court has recognized the validity of awards for overhead and Business and Occupation taxes. Baker & Hickey Co. v. State Road Comm’n., 7 Ct. Cl. 195 (1969). However, the courts are divided over whether profits are properly considered in determining the amount of the equitable adjustment. The Court is of the opinion that an equitable adjustment entitles the contractor to compensation for those expenses directly resulting from the changed condition, but not to a profit on the additional work. The primary purpose of the equitable adjustment is to protect the contractor from the risk of loss, and therefore, may be properly viewed as a recovery in quantum meruit.
The claimant claims damages occasioned by additional financing costs due to the changed conditions encountered. Admittedly, claimant is aware of that portion of West Virginia Code 14-2-12 which states that:
. .In determining the amount of the claim, interest shall not be allowed unless the claim is based upon a contract which specifically provides for the payment of interest.”
The claimant, however, urges this Court to consider a virtually identical Federal statute and a few cases decided by the United States Court of Claims allowing recovery of interest on finance charges on contractor loans. In his pre-trial brief, the claimant cites the cases of Bell v. United States, 404 F.2d 975 (1968) and Phillips Construction Co. Inc. v. United States, 374 F.2d 538 (1967) in support of his claim. The court in Bell upheld the practice of the Armed Services Board of Contract Appeals of allowing such recovery. This practice was initiated by a Department of Defense policy change in 1954 which departed from the long standing *9 doctrine of no interest recovery. Hence, in effect, the defendant government administratively chose to grant compensation for such interest costs, and the Court of Claims sustained this decision. In Phillips, supra, the Court of Claims included additional financing costs in an equitable adjustment of a military construction contract under the Capehart Housing Act, which required the contractor to secure loans in the amount of the required project. “It was inherent in the scheme of the Act that the contractor would obtain private financing and pay interest... ” Phillips, supra, at 541. Aided by this apparent legislative intent and the fact that the parties obviously contemplated the payment of interest at the formation of the contract, the Court was able to circumvent 28 U.S.C. §2516(a), which disallowed interest without a contract provision or act of Congress providing for such payment. It is clear that in each case the Court did not act solely upon its own initiative, but rather implemented a policy properly founded upon administrative or legislative authority.
In the instant case, the contract does not provide for the recovery of interest, and this Court by statute lacks jurisdiction to award interest, and therefore denies recovery of interest and finance charges.
As discussed above, two of the elements of an equitable adjustment under a “changed conditions” clause are the non-assessment of liquidated damages for delays directly resulting from the unanticipated condition and a reasonable extension of time in which to complete the required project when the claimant encountered the unforeseen subsurface condition, substantial excavation in excess of contract indications was necessitated. The additional time required to excavate to a suitable base caused interruptions to the claimant’s projected work schedule and resulted in a delay in the overall completion of the contract. Without prejudice to its contention that a “changed condition” under Standard Specification 104.2 had not yet been encountered, the respondent granted the claimant additional work days based upon the number of days the claimant actually spent on the fill bench areas in excess of the scheduled date of completion. While claimant contends this method of computation is inaccurate, the Court finds that this extension was reasonable.
Obviously, there was a direct causal relationship between the additional work required by the changed conditions and the overall delay in the completion of the project. However, it appears *10 to this Court that the claimant failed to provide adequately for common delays encountered in highway construction and caused by inclement weather, absence or illness of critical personnel, or breakdowns in equipment. It is the responsibility of the contractor to determine the scheduling of activities and the method of actual construction, and to establish a projected timetable or CPM. Errors in judgment or computations on the part of the contractor are not the responsibility of the State. The claimant has not proven that the overall delay or the failure by the contractor to meet the revised completion date was caused by the changed conditions, and therefore the claimant is not entitled to a total recovery of the assessed liquidated damages. Fehlhaber Corp. v. United States, 151 F. Supp. 817 (Ct.Cl. 1957). However, the respondent assessed liquidated damages at the stipulated amount of $300.00 a day for sixty days, or a total of $18,000.00. The dates used in determining the assessment were the revised completion date of September 28, 1973 and the formal opening of the highway on December 28,1973. It was uncontested that the project was substantially completed and accepted on December 6, 1973; it is this date, and not the date of dedication which should have properly been used in the computation of liquidated damages. Therefore, the claimant is entitled to recover 22 days for a total of $6,600.00 of the liquidated damages assessed by the respondent.
The Court directs that the parties consider the findings herein, and at the approximate time not to exceed 120 days from the date of this opinion, file their recommendations for the amount of recovery for the approval of this Court.
IN THE COURT OF CLAIMS OF THE STATE OF WEST VIRGINIA
A. J. BALTES, INC., a Corporation,
Claimant,
vs.
THE WEST VIRGINIA DEPARTMENT OF HIGHWAYS, et al.,
Respondents.
Claim No. D-1002
ORDER AND RECOMMENDATION
This day came A. J. Baltes, Inc., a corporation, Claimant, by James R. Watson, its Attorney, and came the West Virginia *11 Department of Highways, et al., Respondents, by Stuart Reed Waters, Jr., their Attorney, and jointly represented to the Court that as directed by the Court in its opinion issued in the above styled claim, the parties have agreed to an amount of recovery for approval by the Court.
It is hereby jointly recommended by A. J. Baltes, Inc., Claimant, and The West Virginia Department of Highways, et al., Respondents, that the Claimant is entitled to recover from the Respondents, the following sums of money on the following items:
I.EXCAVATION AND EMBANKMENT COST
A.Excavating and Select Rock Fill Placement Cost in “Claimed Areas”.$585,369.83
B. Labor and Equipment Cost for Blasting for Select Rock Fill in “Claimed Areas”.$81,633.02
C. Explosives Cost for Blasting Select Rock Fill for “Claimed Areas” .$32,106.32
Total Actual Cost for Excavation and Select Rock Fill Embankment in “Claimed Areas” .$699,109.17
II. IDLE EQUIPMENT STANDBY
From Date Equipment First Used Until 6/1/71.$42,374.03
III. OTHER ACTUAL COSTS
Including Haul Roads, Pumping, Dewatering and Drainage on Pipe Washout.$36,879.32
TOTAL ACTUAL COST FOR WORK IN “CLAIMED AREAS” .$778,362.52
IV. ADJUSTMENTS
A. Adjustment to total actual cost for payments made at unit bid price based on planned quantities of fill bench excavation between 3/1/71 and 10/31/71 .$154,032.34
*12 B. Adjustment to total actual cost for payments made at unit bid price based on planned quantities of select rock fill excavation placed between 3/1/71 and 10/31/71 .$101,973.69
TOTAL ADJUSTED ADDITIONAL COST DUE TO DIFFERING SITE CONDITIONS .$522, 356.49
V. PAYMENT FOR PRIOR DISALLOWED QUANTITIES
A. Waste
14,206 cubic yards were wasted from below template excavation near Sta. 237 after April 5, 1971.$12,501.28
B. FAT FILLS
Initially the Respondents disallowed 58,663 cubic yards but based upon the Court’s Opinion in the case styled Vecellio & Grogan, Inc. vs. Department of Highways, the Respondents have agreed to compensate the Claimant for 36,471 cubic yards .$46,813.96
VI. LIQUIDATED DAMAGES IMPROPERLY ASSESSED.$6,600.00
TOTAL RECOMMENDED AWARD .$588,271.73
It is further agreed by and between the Claimant and the Respondents hereto that all other items of claim and parts of items of claim not agreed to be paid in this recommendation, as set out and alleged in Claimant’s Notice of Claim filed in this action, are to be disallowed and not considered by the Court for any award and are to be dismissed.
Upon consideration of the Claimant’s and the Respondents’ representations, the Opinion of the Court heretofore filed in deciding the subject claim and the recommendation set out aforesaid, the Court is of the opinion to and does sustain the same and the same are hereby received, filed, and accepted; and it is hereby further ordered that the Claimant be and it is hereby granted an award against the Respondents in the total amount of Five Hundred Eighty-eight Thousand Two Hundred Seventy-one Dollars and Seventy-three Cents ($588,271.73).
*13 It is hereby further ordered that all other items of claim and parts of claims set out and alleged in Claimant’s Notice of Claim, which were not allowed in the above award, are hereby disallowed.
Entered this 24th day of January, 1980.
John B. Garden
Judge
APPROVED BY:
A. J. BALTES, INC., a Corporation,
By James R. Watson Its Counsel
WEST VIRGINIA DEPARTMENT OF HIGHWAYS, et al.
By Stuart Reed Waters, Jr.
Their Counsel