**DETROIT INTERNATIONAL BRIDGE COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–35C.

United States Court of Federal Claims.

Oct. 21, 1994.

Dale W. Rhoades, Grand Rapids, MI, for plaintiff.

Robert J. Krask, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, and Thomas W. Petersen, Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

This action, brought pursuant to the Tucker Act, 28 U.S.C. § 1491 (1992), and the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988), is before the court on the Government's motion to dismiss. The motion is asserted under RCFC 12(b)(1), lack of subject matter jurisdiction, and RCFC 12(b)(4), failure to state a claim upon which relief can be granted. After considering the parties' written and oral arguments, the

court denies the motion to dismiss for lack of jurisdiction but grants dismissal for failure to state a claim.

## FACTUAL BACKGROUND [1]

Plaintiff Detroit International Bridge Company (Detroit) owns the Ambassador Bridge, which spans the border between the United States and Canada, and property adjacent to the bridge. Detroit built inspection facilities there for use by the United States Customs Service, but the company retained ownership of the facilities and property. The United States Government began occupying the new facilities on January 1, 1985. Detroit and the Government, acting through the General Services Administration (GSA), did not execute a written lease, however, until May 1, 1991.[2]

The lease covered the period from January 1, 1985, through December 31, 2004. It contained a standard integration clause, which provided that:

It is mutually agreed by the parties hereto that all terms and conditions of this lease as expressly contained herein represent the total obligations of the Lessor and the Government. Any agreements, written or oral, between the Lessor and the Government prior to execution of this lease are not applicable or binding. . . .

When the parties executed the lease, the Government paid Detroit a lump sum of $2,808,400.08 for its pre-lease tenancy from January 1, 1985, through April 30, 1991. That sum was calculated according to a formula in the lease which provided that annual rent would be based on three factors: return of and on Detroit's investment for the cost of construction; operating costs; and real estate taxes.

During negotiations leading to the agreement, the Government rejected Detroit's assertion that it was entitled to an additional

sum to compensate for the fact that rent for the period through April 30, 1991, was paid in a lump sum more than six years after occupancy began, rather than monthly from the start of the tenancy. They noted their disagreement by including in the lease the following reservation-of-rights clause:

The terms and conditions contained in this contract represent the full and final agreement of the parties regarding all aspects of the contract, except as follows:

It is recognized by the parties that the Lessor has requested that the rental payment under this lease for the period prior to the date of the lease execution reflect that payment occurs in excess of six years after occupancy of the Leased Premises. It is also recognized by the parties that the Government maintains that the lessor is not entitled to have rental reflect said delay in payment. Notwithstanding any other provision of this agreement, it is acknowledged by both parties that the Lessor enters into this agreement specifically reserving its rights to take legal action with respect to this sole issue as it may see fit. Notwithstanding this issue, the Government will pay rent in accordance with the provisions of this contract.

Detroit took the position that the lump-sum payment should have included an additional $1,099,503.64 to compensate for the deferral of monthly rental payments. It submitted a certified claim for that amount to GSA on August 27, 1993.[3] The contracting officer (CO) to whom the claim was submitted responded on November 29, indicating that a formal reply to the claim would be prepared by the end of December. Because the CO did not respond within sixty days after receipt of the claim, Detroit deemed the claim denied and filed suit.

1. Except as noted, the facts are drawn from the complaint.

2. Plaintiff's counsel explained at oral argument that the Government refused to pay Detroit any rent without an executed lease. Detroit makes no claim of duress or vitiation of its consent to the terms of the lease, however.

3. In its claim, Detroit said it arrived at that amount "based on the premise that a hypothetical lessor and lessee in a lease of this nature would mutually agree that the lump sum delayed payment would include a reasonable return to the lessor for the deferral of rental income." Detroit used an eleven percent simple rate of return (eleven percent of the rental balance owed after each year up to the date of payment) to calculate the amount of its claim.

## DISCUSSION

*The parties' contentions*

■ The Government's primary argument is that the relief Detroit seeks is interest and thus is barred by the "no-interest rule." This long-standing rule provides that "interest cannot be recovered against the Government in the absence of an express waiver of sovereign immunity from an award of interest." *Library of Congress v. Shaw*, 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986) (waiver of immunity as to interest must be "separate from a general waiver of immunity to suit"); *accord Chiu v. United States*, 948 F.2d 711, 718–19 (Fed.Cir.1991); *Doyle v. United States*, 931 F.2d 1546, 1550 (Fed.Cir.1991), *cert. denied*, 502 U.S. 1029, 112 S.Ct. 866, 116 L.Ed.2d 772 (1992).

The Government further relies on the codification of the "no-interest rule" at 28 U.S.C. § 2516(a), which provides that: "[i]nterest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof."

Detroit's primary argument is that the sum it seeks is not interest, but unpaid rent, which the Government is contractually obligated to pay. It argues in the alternative that, even if the claim is one for interest, the interest is permitted by contract and thus can constitute an independent claim assertable under the CDA.

*Analysis*

■ The court initially rejects the Government's motion to dismiss insofar as it asserts an absence of subject matter jurisdiction under RCFC 12(b)(1). Detroit submitted a claim to the CO asking for what it termed additional rent. That claim was deemed denied, giving this court jurisdiction under the CDA. Whether the facts alleged would constitute an actionable claim is a separate question that will be addressed under RCFC 12(b)(4).

■ The court notes initially that even if what Detroit seeks can be characterized as rent rather than interest, there must still be a substantive source for the right to receive that rent.[4] As discussed below, there are exceptions to the "no-interest" rule, although they always involve a statutory or contractual right to interest. There are no exceptions, however, to the general requirement that any right to monetary relief against the Government, however characterized, must similarly be grounded in a contract, a statute, or the constitution. Detroit's difficulty ultimately is not the nature of the relief it seeks but the lack of any substantive right to that relief.

■ By any reasonable construction, however, what Detroit seeks here is in fact interest. Black's Law Dictionary defines interest as the "compensation allowed by law or fixed by the parties for the use or forbearance or detention of money.... [or the] [b]asic cost of borrowing money or buying on [an] installment contract." Black's Law Dictionary 729 (5th ed. 1979). Here, Detroit wants to be paid for its forbearance from collecting monthly rent for more than six years, or, put another way, for the economic value of not having to pay rent on an installment basis. The court must look to the substance, rather than the form, of the relief sought to determine whether it is interest. *Shaw*, 478 U.S. at 321, 106 S.Ct. at 2965 ("[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest...." (citations omitted)).

The no-interest rule normally applies in cases where a plaintiff who has recovered an award against the Government seeks interest on that recovery. The courts consistently have denied relief in those cases unless Congress specifically has made the additional waiver of immunity as to interest. *See, e.g., Shaw*, 478 U.S. at 313, 106 S.Ct. at 2960–61 (interest on award of attorney's fees); *Chiu*, 948 F.2d at 719 (same); *Doyle*, 931 F.2d at

---

**4.** If Detroit has a contractual right to the relief it seeks from the Government, then it matters not how that relief is characterized. If the contract obligates the Government to pay more, Detroit can recover that sum, even if it is properly char- acterized as interest. By the same token, however- er, if the Government has no contractual obligation to pay more, there is no liability, even if the claim is properly characterized as one for rent.

1550 (interest on award of back pay). Similarly, the "no-interest" statute relied on by the Government, 28 U.S.C. § 2516(a), is fundamentally a clarification that pre-judgment interest does not run against the government. A valid underlying claim is assumed.

As a practical matter, the underlying claim here was the rent for the period 1985–1991. That rent was paid voluntarily, and what Detroit now seeks is interest on it. The "no-interest" rule thus applies.

Detroit attempts to circumvent the no-interest rule by arguing that even if what it seeks is interest, it is not interest on a claim, but interest as a claim. This does not avoid the underlying problem, however, in that a source for that right to interest must also be found.

■ Generally, an award of interest must be expressly permitted by statute or by contract. Either circumstance, combined with the Tucker Act, constitutes a waiver of sovereign immunity.[5] In this case, Detroit looks to the CDA and to its contract with the Government for a right to the recovery it seeks.

■ The CDA does not create a statutory right to interest, except insofar as it permits interest on a claim. Detroit recognizes this, and, as discussed above, argues that the relief it seeks is not interest on a claim, but interest as a claim.[6] 41 U.S.C. § 611. The caselaw is clear, however, that, except for very limited circumstances, "a demand for interest alone is not a claim under the CDA." *Esprit Corp. v. United States*, 6 Cl.Ct. 546, 548 (1984) (citing *Nab–Lord Associates v. United States*, 682 F.2d 940, 230 Ct.Cl. 694, 699 (1982)), *aff'd*, 776 F.2d 1062 (Fed.Cir. 1985) (table); *accord Essex Electro Engineers, Inc. v. United States*, 22 Cl.Ct. 757, 766 (1991), *aff'd*, 960 F.2d 1576 (Fed.Cir.),

*cert. denied*, ―― U.S. ――, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992).

Detroit initially attempts to fit the facts here into a line of decisions that permit interest as part of a claim for an equitable adjustment to a contract price. In those cases, contractors under fixed-price contracts won reimbursement for additional interest expenses they were forced to incur because of changed conditions or government-caused delays. *See, e.g., Bell v. United States*, 404 F.2d 975, 186 Ct.Cl. 189 (1968); *Phillips Construction Co. v. United States*, 374 F.2d 538, 179 Ct.Cl. 54 (1967). Those cases are clearly distinguishable, however. They involved claims brought under equitable adjustment clauses that allowed for recovery of damages. In short, the right to interest was contract-based. There was no such clause in the lease at issue here, and there was no claim of change or delay.[7] Moreover, the cases Detroit cites permitted a recovery of additional interest expense on debt incurred by the contractors. In this case, however, Detroit concedes it did not borrow money to build the leased facility.

Detroit also alleges that a contract to pay rent is implied, with respect to the pre-lease tenancy, from the Government's use and occupation of the property. Under that implied contract, it is argued, the Government must pay fair rental value. Detroit would determine fair rental value by looking to the formula in the lease, and specifically to its provision for a return "of and on" Detroit's investment. Under the lease, the return-on-investment element of rent is calculated by multiplying Detroit's construction and development costs by a direct reduction loan factor, using a formula with a built-in assumption of level monthly payments and recovery of costs over twenty years.

The Government's initial payment of more than six years' rent was calculated under the

---

5. The Tucker Act merely confers jurisdiction on this court when a substantive right to recovery exists; it does not create the substantive right. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980), *citing United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

6. Section 611 permits interest on a claim only from the time when the claim is submitted.

Thus, even if Detroit were seeking interest on a claim, given that the company did not submit its claim until 1993, there is no basis under § 611 for recovering interest for the pre-lease period at issue, from 1985 through 1991.

7. Detroit has maintained that the compensation it seeks is for underpayment of rent, not for delay.

formula in the lease. But the payment was made in a lump sum, rather than in monthly installments. The lump-sum payment included no adjustment to compensate for the deferral of monthly payments. Therefore, Detroit asserts,[8] that initial payment was inadequate and did not constitute fair rental value under the Government's implied contractual obligation.

■ To establish the existence of an implied-in-fact contract obligating the Government to pay fair rental value for its pre-lease tenancy, Detroit would have to prove the same elements required for an express contract, including a meeting of the minds as to specific contract terms. *Pacific Gas & Electric Co. v. United States*, 3 Cl.Ct. 329, 338–39 (1983) (implied-in-fact contract requires showing of same mutuality of intent as that required for express contract), *aff'd*, 738 F.2d 452 (Fed.Cir.1984). An obligation based on circumstances short of such an agreement would have to arise as an implied-in-law contract, which imposes a duty without regard to the parties' intent. Such a contract would not be enforceable in this court. *Pacific Gas & Electric*, 3 Cl.Ct. at 340 (citing *Putnam Mills Corp. v. United States*, 479 F.2d 1334, 1337, 202 Ct.Cl. 1 (1973)).

■ Detroit must do more, therefore, than merely establish an implied agreement to tender and accept "fair rental value." The sum of rent the parties set for the premises was tendered by the Government and accepted by Detroit upon execution of the lease. Detroit cannot augment that sum unless it shows that the parties specifically agreed to a rent adjusted to reflect the value of deferred payment. Detroit has failed to allege such an agreement, and the facts alleged are inconsistent with such a claim. Moreover, if the Government was ever obligated under an implied-in-fact agreement to pay a fair rental value adjusted to reflect the deferral of monthly payments, that obligation would have been extinguished by the lease's integration clause, which provides that: "[a]ll terms and conditions of this lease as expressly contained herein represent the total obligations of the Lessor and the Government.

Any agreements ... between the Lessor and the Government prior to execution of this lease are not applicable or binding...."

The period which Detroit alleges is covered by an implied-in-fact contract is the period during which Detroit and the Government were negotiating their written lease. However, it is well established that "in negotiations where the parties contemplate that their contractual relationship would arise by means of a written agreement, no contract can be implied." *Pacific Gas & Electric*, 3 Cl.Ct. at 339 (citing *De Matteo Construction Co. v. United States*, 600 F.2d 1384, 1388, 220 Ct.Cl. 579 (1979); *American General Leasing, Inc. v. United States*, 587 F.2d 54, 58, 218 Ct.Cl. 367 (1978). *See generally Ship Construction & Trading Co. v. United States*, 91 Ct.Cl. 419, 456, 1940 WL 4096 (1940) ("[I]f parties dealing with each other with the view of arriving at a contract intend that their negotiations shall be finally reduced to writing and signed by them as evidence of the terms and conditions of the agreement, there exists no binding contract until the written contract setting forth such terms and conditions is executed."), *cert. denied*, 312 U.S. 699, 61 S.Ct. 737, 85 L.Ed. 1133 (1941)).

With no implied-in-fact contractual obligation, Detroit may rely only on the express terms of the lease. Detroit finds two provisions there for the compensation it seeks: the return-on-investment component of the formula for calculating annual rent and the reservation-of-rights clause. Neither succeeds.

The fact that the lease provides for a return on investment in its formula for calculating the Government's rent in no way helps Detroit. Both the lump-sum rental payment and subsequent monthly rental payments were calculated according to the formula in the lease. The lease makes no further provision for adjusting that formula to reflect the value of deferring monthly payments. Such a provision would have to be inferred. That inference would run afoul of the integration clause, as discussed above, and would direct-

---

8. This assertion appears in the briefing. As defendant points out, in its complaint, Detroit refers to the lump-sum payment as "fair rental value."

ly contradict the reservation-of-rights clause, in which both parties recognize that "the Government maintains that the lessor is not entitled to have rental reflect [the] delay in payment." The omission of a provision to adjust for the deferral of monthly payments was not simply an oversight. The integration clause and the reservation-of-rights clause make it clear that this was an omission by design.

The court cannot impose terms a hypothetical lessor and lessee might have agreed to where the written agreement makes it clear that the actual lessor and lessee specifically considered and failed to agree to those terms. The parties recognized in the integration clause that the express terms of the lease were the only terms binding on the Government. They recognized in the reservation-of-rights clause that the Government did not agree to pay an additional sum to reflect the value of deferring monthly rent. Detroit cannot use the reservation clause as evidence of an agreement the Government specifically avoided. That clause merely acknowledges plaintiff's right to pursue a claim. It adds no substance to that claim.

Detroit, for whatever reason, chose to delay pursuit of a remedy with respect to the Government's continued occupation of the premises without paying rent. It cannot now shift to the Government the cost of that delay. The Government never agreed to pay that cost, and no statute obligates it to do so.

## CONCLUSION

Finding no statutory or contractual basis for the relief Detroit seeks, the court grants the Government's motion to dismiss under RCFC 12(b)(4) for failure to state a claim upon which relief can be granted. The Clerk is directed to dismiss the complaint with prejudice. No costs.