**ROBERT F. SIMMONS & ASSOCIATES**

**v.**

**The UNITED STATES.**

No. 68–64.

United States Court of Claims.

May 13, 1966.

David V. Anthony, Washington, D. C., attorney of record, for plaintiff. John M. Allen and Sellers, Conner & Cuneo, Washington, D. C., of counsel.

Herman Wolkinson, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, JONES, Senior Judge, and LARAMORE, DAVIS and COLLINS, Judges.

JONES, Senior Judge.

The plaintiff herein was one of fourteen bidders on a Government contract for the construction of an office building in Covington, Kentucky, to be leased by the builder to the Internal Revenue Service on a long-term rental basis. The General Services Administration (GSA) decided it was in the public interest to reject *all* bids as it is authorized to do by statute,[1] and notified the bidders of this action. The specific reason given in the written notification for the rejection was the passage of a law [2] requiring prior congressional approval for the contracting of any construction and lease project valued in excess of $200,000. This law became effective after the Invitation for Bids was announced but prior to the bid opening date.[3]

Plaintiff here seeks recovery of its bid preparation expenses contending that the Government was obligated to consider the merits of its bid and could not reject it without so considering it, citing Heyer Products Co. v. United States, 140

1. 10 U.S.C. § 2305 (1958) provides in part:

"(c) Bids shall be opened publicly at the time and place stated in the advertisement. Awards shall be made with reasonable promptness by giving written notice to the responsible bidder whose bid conforms to the invitation and will be the most advantageous to the United States, price and other factors considered. However, all bids may be rejected if the head of the agency determines that rejection is in the public interest."

A similar statement reserving the right to reject any and all bids was included in the Invitation for Bids, Part II, para. 14, entitled *AWARD*.

2. The General Provisions of the Independent Offices Appropriation Act for 1963, 76 Stat. 728, effective October 3, 1962.

3. The Invitation for Bids was announced on August 28, 1962; the new law was signed on October 3; and the bid opening date was October 15.

F.Supp. 409, 135 Ct.Cl. 63 (1956). Both parties move for summary judgment alleging there are no material issues of fact; the Government contending that plaintiff has failed to state a cause of action. We find for the Government.

The facts necessary for an understanding of the issues involved are stated in the briefs filed by both parties. In essence, on August 28, 1962 the GSA announced an Invitation for Bids on the construction of an office building in Covington, Kentucky, to be used by the Internal Revenue Service. The building was to contain approximately 180,000 square feet of space. Once constructed, the building was to be leased to the Government rather than owned by it. Each prospective builder/lessor was to quote in its bid various long-term rental rates. The invitation stated that the award of the contract would be decided on a consideration of the various proposed lease arrangements, and that the Government reserved the right to reject any and all bids received. The bid opening date was set for October 15.

On October 3, 1962, the President signed into law the Independent Offices Appropriation Act for 1963, which contained a provision requiring congressional approval prior to the awarding of any construction and lease contracts valued in excess of $200,000. No attempt was made by GSA at any time after this and up to the time of rejection of all bids to acquire congressional approval for the project here in controversy. However, affidavits have been filed by the Government which indicate seemingly valid reasons for not seeking congressional approval and for going ahead with the bid opening even though no approval had been acquired. The statements in these affidavits are disputed by plaintiff. However, since we dispose of this case on other grounds, it is unnecessary to determine these factual issues.

On October 15 all fourteen bids were opened. Cost to the Government for leasing the proposed building for 20 years ranged from $5,681,200 to $9,309,960. Affidavits and records submitted by the Government indicate that plaintiff was the seventh lowest bidder and the third lowest responsive bidder, if plaintiff was in fact responsive to the bid specifications. Two months later on December 13, the GSA notified all fourteen bidders that their bids had been rejected in the interest of the public. It was further stated that a law requiring congressional approval prior to awarding this type of contract had become effective after the invitations had gone out but prior to the bid opening and that this project would need to be held in abeyance until congressional approval had been obtained. New Invitations for Bids, it was stated, would be issued if approval was granted.

Plaintiff contends as grounds for granting its motion for summary judgment that GSA obviously did not consider the merits of any of the bids but rather decided, after passage of the new law, to receive all the bids and then summarily reject them as not being in the public interest. It is contended that this is obvious from a reading of the notice of rejection where the only reason given, other than the over-all "not in the public interest" assertion, is the passage of the new requirement of prior congressional approval on these contracts. Plaintiff contends that the holding in *Heyer Products,* supra, obligates the Government to consider all bids on their merits before rejecting them and that, by failing to do so in this instance, the Government has become liable for paying plaintiff's bid preparation costs. Plaintiff also contends that GSA should have attempted to acquire congressional approval after the law was passed, or else have notified all prospective bidders to cease expending further funds in preparing bids until approval was obtained. Plaintiff places its costs of bid preparation at $23,028.73.

The Government states several grounds as allegedly sufficient for us to find that plaintiff has not stated a cause of action. (1) Plaintiff was not the lowest responsible bidder. (2) Plaintiff's bid was not responsive to the specifications. (3) GSA had valid reasons, other than the

new law, for rejecting all bids. The Government has submitted affidavits and other records to support these first three contentions. Plaintiff has countered these, and so triable issues of fact exist on these three points. However, since we choose to decide this case on the Government's fourth contention, which will be dispositive of plaintiff's entire claim, there is no necessity for a trial on the first three issues raised.

The fourth contention of the Government is that even if GSA did not consider the bids on their merits but decided to reject all bids because of the new requirement of congressional approval, still this is not the "bad faith" dealing which allegedly is necessary to come under the *Heyer Products,* supra, decision. We are in agreement with this contention.

The decision of this court in *Heyer Products,* supra, involved disposition of the Government's motion to dismiss the plaintiff's petition for failure to state a cause of action. Plaintiff therein had alleged that it had been the low responsible bidder on a Government contract to supply 5,500 low-voltage circuit testers to the Army and that the Government had deliberately ignored plaintiff's bid as retaliation for plaintiff's appearance before certain Senate hearings. It was further alleged that the Government had intended, from the time the Invitation for Bids was announced, to award the contract to a certain favored bidder, regardless of the merits involved, and that the contract was in fact awarded to the predetermined favored bidder at a price al-

most double that submitted by the plaintiff. It was further alleged that this acceptance of a bid which was $190,043 higher than plaintiff's could not possibly be the most advantageous for the Government.

In denying the Government's motion to dismiss in *Heyer Products,* supra, this court held that even though an unsuccessful bidder derives no standing to sue in court from the procurement statute,[4] and has no express contract upon which to base its claim,[5] nevertheless, if plaintiff can "make out a case of discrimination against it and of favoritism toward the successful bidder",[6] it may recover expenses incurred in preparing its bid. This, however, was held by the court to be a very limited right. As was stated 140 F.Supp. on page 414, 135 Ct.Cl. on page 71, *Heyer Products,* supra:

> It goes without saying that not every unsuccessful bidder is entitled to recover the cost of putting in his bid. Recovery can be had in only those cases where it can be shown by clear and convincing proof that there has been a fraudulent inducement for bids, with the intention, before the bids were invited or later conceived, to disregard them all except the ones from bidders to one of whom it was intended to let the contract, whether he was the lowest responsible bidder or not. In other words, it must be shown that bids were not invited in good faith, but as a pretense to conceal the purpose to let the contract to some favored bidder, or to one of a group of preferred bidders, and with the intent to wilfully,

4. Heyer Products Co. v. United States, 140 F.Supp. 409, 135 Ct.Cl. 63, 68 (1956). Standing cannot be derived from the procurement statute, i.e., that the contract will be awarded to "the responsible bidder whose bid conforms to the invitation and will be the most advantageous to the United States", because the statute was enacted solely for the benefit of the public, and not the bidders. E.g., Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Colorado Paving Co. v. Murphy, 78 F. 28, 37 L.R.A. 630 (8th Cir. 1897), appeal dismissed, 166 U.S. 719, 17 S.Ct. 997, 41 L.Ed. 1188 (1897); Royal Sundries Corp. v. United States, 112 F.Supp. 244 (E.D.N.Y., 1953).

5. Heyer Products Co. v. United States, 140 F.Supp. 409, 135 Ct.Cl. 63, 69 (1956). Plaintiff's submission of a bid was only an offer to contract and would not guarantee any rights until accepted by the Government. Fulton Iron Co. v. Larson, 84 U.S.App.D.C. 39, 171 F.2d 994 (1948), cert. denied, 336 U.S. 903, 69 S.Ct. 489, 93 L.Ed. 1068 (1949).

6. Heyer Products Co. v. United States, 177 F.Supp. 251, 147 Ct.Cl. 256, 258 (1959).

capriciously, and arbitrarily disregard the obligation to let the contract to him whose bid was most advantageous to the Government.

When the issues in *Heyer Products* were tried on their merits, 177 F.Supp. 251, 147 Ct.Cl. 256 (1959), the court ruled that the plaintiff had failed to prove that the Government's rejection of its bid was arbitrary, capricious, or in bad faith as had been alleged in the petition. The court further held that there was insufficient proof of any favoritism in the award of the contract to the higher bidder. The plaintiff was thus denied recovery of its bid preparation costs. In the several cases which have been considered by this court since the two *Heyer Products* decisions, dealing with the claims of unsuccessful bidders for their bid preparation expenses, the court has on each occasion found a total lack of any of the facts necessary to come within the rule in *Heyer Products* and has denied recovery.[7] We are of the same opinion on the facts alleged in the instant case.

There is no allegation in the present pleadings that GSA showed any favoritism toward any bidder, or that GSA harbored any preconceived intention to ignore the merits of the bids submitted and discriminately award the contract to a select bidder. The pleadings lack any showing of arbitrary, capricious, or bad faith actions on the part of GSA. Yet this is what is required to come within the decision in Heyer Products Co. v. United States, 140 F.Supp. 409, 135 Ct. Cl. 63 (1956). Certainly it cannot be held that the passage of a law by the Congress relating to the letting of contracts, the law having been passed before any contract was entered into, is reason for allowing a prospective bidder recovery of its bid preparation costs.

■ It is settled law that an agency of the Government cannot create a binding contract without the authority of an appropriation of funds from the Congress to cover the contract. If such an unauthorized contract is entered into, it is a nullity. Hooe v. United States, 218 U.S. 322, 334, 31 S.Ct. 85, 54 L.Ed. 1055 (1910). Therefore, GSA could not have created a binding contract with any of these fourteen bidders in the absence of prior congressional approval of the contract. The Congress passed this new requirement before any of the bids were accepted by GSA. This was not an instance where the Congress withdrew appropriations after the contract was consummated. Seatrain Lines, Inc. v. United States, 99 Ct.Cl. 272, 315 (1943).

We are concerned here solely with the rights of a bidder on a Government contract who suffered an allegedly needless expenditure of funds in bid preparation, because the Congress decided to change the contract awarding procedures of the administrative agency. There is no remedy in this court for such damages.

Nor is there any merit in plaintiff's contention that GSA's failure to seek congressional approval, either before or after the bid opening, was improper. In view of the wording of the statute it is doubtful whether the Congress would have granted any approval without definite proposed rentals. These rates could only be obtained by opening the bids. Furthermore, GSA could hardly decide whether to seek approval or not until it had studied the bids. This, of course, is why the agency has the discretionary power to reject any and all bids and refuse to award the contract to anyone. The decision of GSA, therefore, to reject all bids without seeking congressional approval was entirely within its discretion. It was not that type of arbitrary, capricious or bad faith action which was held in *Heyer Products,* supra, to be grounds for damages.

For the above reasons, plaintiff's motion for partial summary judgment is denied, defendant's cross-motion for summary judgment is granted, and plaintiff's petition is dismissed.

7. E.g., Keco Industries, Inc. v. United States, 149 Ct.Cl. 837 (1960), cert. denied, 365 U.S. 815, 81 S.Ct. 697, 5 L.Ed. 2d 694 (1961); Martin Iscow v. United States, 161 Ct.Cl. 875 (1963); Green Manor Construction Co., Inc. v. United States, 169 Ct.Cl. 413 (1965).