**KINETIC STRUCTURES
CORPORATION**

v.

**The UNITED STATES.**

No. 339–82C.

United States Claims Court.

Oct. 5, 1984.

Tunney Lee King, Columbus, Ohio, for plaintiff.

Lori F. Fischler, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Walter R. Pierce, Defense Logistics Agency, Columbus, Ohio, of counsel.

## OPINION

YOCK, Judge.

This contract case is before the Court on defendant's motion for summary judgment. Plaintiff is a disappointed bidder who seeks declaratory or injunctive relief in regard to two contract matters. In the first count of its complaint, the plaintiff seeks declaratory or injunctive relief in regard to a contract awarded to a lower bidder. In the second count, the plaintiff seeks declaratory or injunctive relief in regard to a canceled solicitation in which the plaintiff was the sole bidder. A third count of the complaint seeks bid preparation costs for both of the contract matters at issue.

This Court previously dismissed the plaintiff's first count, in this action, for lack of jurisdiction. *Kinetic Structures Corp. v. United States*, 2 Cl.Ct. 343 (1983). This motion, therefore, relates only to the remaining second count and third count issues.

For the reasons discussed herein, the defendant's motion is granted, and the plaintiff's complaint will be dismissed.

### Facts

On February 5, 1981, the Defense Logistics Agency (DLA) solicited bids for contract No. DLA 710–81–D–0006 ('0006), a small business set-aside, for the reconditioning and "electro-velvet coating" of certain Government-owned banker type building partitions. Plaintiff, along with three other bidders, submitted a bid in compliance with the requirements of the solicitation. On February 26, 1981, the bids were opened and the lowest bidder was J & B Painting Company, Inc. (J & B), which submitted a bid of $70,240.40. The plaintiff's bid was the next lowest bid submitted at $74,140.19. In early March 1981, J & B self-certified that it was a small business concern and that it was a regular dealer in the supplies offered, as required under the Walsh-Healey Act, 41 U.S.C. §§ 35–45 (1982). The Defense Contract Administration Services Management Area (DCASMA) performed a pre-award survey in which it

took no exception to the self-certification by J & B. On April 1, 1981, after making the requisite determination of responsibility required under DAR 1–905, 32 C.F.R. § 1–905 (1983),[1] including the findings necessary for the Walsh-Healey Act, DAR 1–905.4(d), 32 C.F.R. § 1–905.4(d), DLA awarded contract '0006 to the low bidder, J & B. The contract award was signed by Mr. Jack Miceli, the Government contracting officer.

On April 7, 1981, the plaintiff filed a protest against the award of contract '0006, alleging that J & B was not an eligible contractor and that the plaintiff, as second low bidder, should be awarded the contract. The protest was couched in language that indicated the plaintiff's main concern was the use by the Government in its solicitation and contract documents of the plaintiff's registered trade name of "Electro-velvet" to describe the flocking or paint coating operation that the Government apparently desired. The plaintiff also made clear, however, that it was protesting both the award of contract '0006 to J & B and the loss of the award of that contract.

On April 22, 1981, the Government denied the protest. Mr. Frankie T. Stewart, another DLA contracting officer, informed the plaintiff that, based on the selfcertification and pre-award survey, the Government had determined J & B to be the low responsive and responsible bidder. Mr. Stewart also defended the Government's use of the term "electrovelvet" in the solicitation by describing it as being used in the generic sense to mean the flocking or paint coating operation that it desired. He did state, however, that the Government would refrain in the future from using the offending term. On May 8, 1981, contract '0006 was modified and amended to delete all references to "electrovelvet" and substitute therefor the term "electrostatic flocking."

The Government in this action acknowledges that Mr. Stewart's handling of the

plaintiff's protest failed to comply with the specific requirements described in DAR 12–604(c), 32 C.F.R. § 12–604(c). When the post-award protest was received, the Government was supposed to inform both the contractor and the protesting party, within 10 days of the protest, so that both could furnish additional evidence to support their respective positions. The contracting officer was then supposed to review all of the evidence, reach a decision, and forward the matter to the Department of Labor (DOL). Here, Mr. Stewart neither provided the companies time to respond to the protest nor forwarded the matter to the DOL. He simply denied the post-award protest.

On November 30, 1981, contract '0006 was terminated for the convenience of the Government. The basis for this termination was listed by Ms. Donna Huff, another DLA contracting officer, as deficient specifications.

As a result, the plaintiff asserts that the Government's failure to follow its regulations and its denial of the awarding of contract '0006 to the plaintiff comprise a sufficient basis on which to recover its bid preparation costs for contract '0006, in the amount of some $625.

On July 29, 1981, DLA issued another invitation for bids for the reconditioning of Government-owned banker type partitions with electrostatic coating. Solicitation DLA 710–81–B–0048 ('0048) was a small business set-aside acquisition, and the plaintiff responded by submitting the sole bid in the amount of $197,853.44. The Government's original cost estimate, based on a prototype procurement, was $136,-797.75, and an engineering cost estimate, prepared by Government engineers, was $148,000.00. Due to the disparity between the plaintiff's offer and the two Government estimates, the Government contracting officer, Ms. Donna Huff, asked the plaintiff to submit a cost breakdown, which the plaintiff subsequently provided. Based on these facts and figures, Ms. Huff found

---

**1.** In all pertinent respects, the C.F.R. sections cited in this opinion remained essentially unchanged between 1981 and 1983, the time frame at issue here. Therefore, to facilitate reference, the 1983 C.F.R. will be cited throughout this opinion.

plaintiff's bid to be excessive and unreasonable and, on September 21, 1981, recommended that solicitation '0048 be canceled. Specifically, in her "Determination and Finding" report, she found that:

A cost comparison of the aforementioned [estimates] indicates that sole bid exceeds the DSAC Cost Estimate by $61,055.69 or 44.6%, the government estimate by $49,853.44 or 33.6%, and the previous cost comparison by $30,003.44 or 17.8%.

In addition, she discussed the informal cost breakdown provided by the plaintiff:

Bid price reveals hourly labor rates of $34.54 to $34.99 were used throught [sic] their bid versus the Government estimated rates of $11.00 to $15.00. In no way can the contractor's "$35.00" rates be determined fair and reasonable as painter or carpenter rates as required for this contract. While the feet are to be flocked on subject bid instead of painted, as per previous contract, the price difference is only slightly greater.

She concluded her report by stating that:

In view of the foregoing cost differences, the undersigned contracting officer hereby determines the bid of Kinectic [sic] Structures excessive pursuant to DAR 2–404.1(b)(vi).

On September 25, 1981, Ms. Doris Hairston, Chief of the Bid and Abstract Section at DLA, officially canceled solicitation '0048 based on "ASPR 2–404.1(b)(vi), unreasonable prices."

There are presently no requirements existing or planned by DLA for electrostatic flocking of banker partitions due to the difficulties with promulgating adequate specifications and the high costs resulting from the lack of competitive bidding in the procurement. Plaintiff contends that the arbitrary and capricious cancellation of solicitation '0048, resulting from bad faith on the part of Ms. Huff, entitles it to the reinstatement of the solicitation and award of the contract. In the event the reinstatement of the solicitation and award of the contract to the plaintiff is not granted by the Court, the plaintiff claims to be entitled to bid preparation costs of some $3,100 in regard to solicitation '0048.

In December 1981, the plaintiff filed suit in the United States District Court for the Southern District of Ohio. The District Court, however, dismissed the case for lack of subject matter jurisdiction, recommending that the plaintiff seek a remedy in this Court. *Kinetic Structures Corp. v. Defense Logistic [sic] Agency,* No. C–2–81–1514 (S.D.Ohio July 26, 1982).

The plaintiff subsequently filed a petition with this Court's predecessor, the United States Court of Claims, on July 12, 1982, seeking recovery under three counts. In its first count, the plaintiff requested the Court to void the award of contract '0006 to J & B and award it to the plaintiff. In its second count, the plaintiff contended that solicitation '0048 should be reinstated and that the contract should be awarded to the plaintiff. In its third count, the plaintiff sought bid preparation costs for both unsuccessful contract bids.

Thereafter, on October 12, 1982, the defendant filed a motion to dismiss plaintiff's first and second counts seeking injunctive relief, contending that this Court lacked jurisdiction over the subject matter of the claim. On April 29, 1983, this Court granted the defendant's motion to dismiss with regard to the plaintiff's first count, finding it lacked jurisdiction to hear post-award contract injunctive actions. *Kinetic Structures Corp. v. United States, supra; John C. Grimberg Co. v. United States,* 1 Cl.Ct. 253 (1982), *aff'd,* 702 F.2d 1362 (Fed.Cir. 1983). However, this Court retained jurisdiction over the plaintiff's second preaward cause of action, seeking equitable relief that would reinstate the canceled solicitation, and over plaintiff's third cause of action, seeking its bid preparation costs for both contracts. The defendant has conceded this Court's jurisdiction over the plaintiff's claims for bid preparation costs. *Keco Industries, Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233 (1970) (*Keco I*); *Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409 (1956). *See also*

*Keco Industries, Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200 (1974) (*Keco II*).

Defendant has now moved for summary judgment asserting that the Government contracting officer's awarding of contract '0006 to J & B and cancellation of solicitation '0048 were reasonable and that the failure of the contracting officer to follow DAR 12–604(c) was inadvertent and resulted in no prejudice to the plaintiff. Plaintiff has responded that a genuine issue of material fact exists as to whether the Government acted arbitrarily and capriciously in canceling solicitation '0048 and in awarding contract '0006. It also asserted that a factual dispute exists as to the illegality of the Government contracting officer's failing to adhere to the requirements of DAR 12–604(c).

### Discussion

■ Plaintiff requests two forms of relief in this Court, equitable relief in regard to solicitation '0048, and monetary relief in the form of bid preparation costs for contract '0006 and solicitation '0048.[2] Each claim has its own basis for jurisdiction in this Court, and thus will be analyzed and discussed separately below. In ruling on a motion for summary judgment, this Court has held that:

> It is axiomatic that in ruling on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, which is identical to RUSCC 56, any doubt about whether there is a genuine issue of material fact will be resolved in favor of the non-moving party. *See, e.g., Adickes v. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). And the burden on that party to show there is a genuine dispute about a material fact is not a stringent one. *See First Nat. Bank v. Cities Service Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). However, once the moving party has produced evi-

dence which apparently establishes a material fact, the non-movant may not discharge his burden by cryptic, conclusory or generalized responses, *Willetts v. Ford Motor Co.,* 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley,* 514 F.2d 971, 976 (3d Cir.1975), or by remaining silent. He "must set forth specific facts showing there is a genuine issue for trial." RUSCC 56(e); *see Atlantic States Construction Co. v. Robert E. Lee & Co.,* 406 F.2d 827 (4th Cir.1969).

*Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983). *See also D & S Universal Mining Co. v. United States,* 4 Cl.Ct. 94 (1983); *Crawford v. United States,* 3 Cl.Ct. 323 (1983).

### 1. Declaratory/Injunctive Relief

■ In its second cause of action, plaintiff sought equitable relief in the form of reinstatement and award of canceled solicitation '0048. Since no award has been made with respect to this contract, plaintiff's claim falls within the definition of a pre-award claim. Consequently, this Court has jurisdiction over plaintiff's second count under 28 U.S.C. § 1491 (1982).

Title 28 U.S.C. § 1491 states in pertinent part:

> (a)(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

*See also F. Alderete General Contractors Inc. v. United States,* 4 Cl.Ct. 482 (1984); *International Graphics v. United States,* 4 Cl.Ct. 186 (1983); *John C. Grimberg Co. v. United States, supra.*

*Keco Industries, Inc. v. United States, supra,* 192 Ct.Cl. at 784, 428 F.2d at 1240; *Heyer Products Co. v. United States, supra,* 135 Ct.Cl. at 71, 140 F.Supp. at 412.

---

**2.** The plaintiff has also requested money damages for lost profits on both contract '0006 and solicitation '0048. The law is well settled that disappointed bidders are not entitled to lost profits on a contract they never received. *See*

This Court will ordinarily refrain from interfering with the Government procurement process by declining to enjoin the Government from exercising its discretion in conducting its business. *See F. Alderete General Contractors Inc. v. United States, supra,* 4 Cl.Ct. at 493; *DeMat Air, Inc. v. United States,* 2 Cl.Ct. 197, 201 (1983); *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983); *John C. Grimberg Co. v. United States, supra,* 1 Cl.Ct. at 255. The purpose behind the Court's deference is to permit the Government to fulfill its contractual requirements at the lowest possible cost to the public. *John C. Grimberg Co. v. United States, supra,* 1 Cl.Ct. at 255. Thus, the equitable jurisdiction of this Court, under 28 U.S.C. § 1491(a)(3), may only be invoked in "extraordinary circumstances," *F. Alderete General Contractors Inc. v. United States, supra,* 4 Cl.Ct. at 493, such as when the Government breaches its duty to consider fully and fairly all responsive bids, *International Graphics v. United States, supra,* 4 Cl.Ct. at 192; *John C. Grimberg Co. v. United States, supra,* 1 Cl.Ct. at 255; *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 864 (D.C.Cir.1970), or when the actions of the procurement officials involved "lacked a rational or reasonable basis." *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (1971); *F. Alderete General Contractors Inc. v. United States, supra,* 4 Cl.Ct. at 493; *International Graphics v. United States, supra,* 4 Cl.Ct. at 197. Thus, this Court's role in reversing an agency's procurement decisions is extremely limited.

In *DeMat Air, Inc. v. United States, supra,* 2 Cl.Ct. at 201, this Court, quoting from *Baird Corp. v. United States, supra,* described its circumscribed powers with respect to Government procurements:

Judicial review of an agency's pre-award procurement decision is, and should be, extremely limited in scope. The court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable. It is the burden of the aggrieved bidder to demonstrate that there was no rational basis for the agency's determinations.

\* \* \* \* \* \*

Where injunctive relief is sought, which relief is deemed drastic in nature, the court must exercise great caution and even then, the aggrieved bidder should be made to establish its right to such drastic relief by means of clear and convincing evidence. Even in the exercise of sound judicial discretion, in the absence of overriding public interest considerations, the court should refuse to look favorably on declaratory or injunctive relief requests in pre-award bid protest actions, and should not overturn any pre-award procurement determination *unless the aggrieved bidder establishes that there was no rational basis for the agency's determination.*

(Emphasis supplied and citations omitted.) Further, contracting officers may appropriately exercise wide discretion in their evaluation of bids and their application of procurement regulations. *DeMat Air, Inc. v. United States, supra,* 2 Cl.Ct. at 202; *Big Bud Tractors, Inc. v. United States,* 2 Cl.Ct. 188, 192–93 (1983).

In *American General Leasing, Inc. v. United States,* 218 Ct.Cl. 367, 374–75, 587 F.2d 54, 58–59 (1978), Judge Kunzig described the heavy burden borne by a plaintiff in establishing that the Government had failed to act rationally or reasonably:

It is settled law that no assurance exists that a contractor will receive an award and that the Government retains, in its discretion, the right to reject all bids without liability, even after there have been extensive negotiations with a bidder.

\* \* \* \* \* \*

[W]here the Government alleges a reasonable basis for cancelling the solicitation, *i.e.* a revision in specifications, it is clear that plaintiffs must do more than

assert what amounts to mere naked charges of arbitrary and capricious action in order to obtain a trial. *See Robert F. Simmons & Assoc. v. United States,* 175 Ct.Cl. 510, 360 F.2d 962 (1966). The burden is thus upon the plaintiff to show either that the Government contracting officers, involved in the procurement of solicitation '0048, "lacked a rational or reasonable basis" for their cancellation decision. *F. Alderete General Contractors Inc. v. United States, supra,* 4 Cl.Ct. at 493; *Baird Corp. v. United States, supra,* 1 Cl.Ct. at 664; *M. Steinthal & Co. v. Seamans, supra,* 455 F.2d at 1301. Absent such a showing, the plaintiff must present evidence of a "clear and prejudicial violation of applicable statutes or regulations." *DeMat Air, Inc. v. United States, supra,* 2 Cl.Ct. at 202.

The plaintiff contends that the cancellation of solicitation '0048 by Ms. Huff was an arbitrary and capricious action. Specifically, the plaintiff contends that Ms. Huff had a personal dislike for the plaintiff's president, Mr. J.R. Haller, and that this personal dislike caused her to seek ways to avoid awarding solicitation '0048 to the plaintiff. The plaintiff supports this contention by citing to two affidavits attached to its response. The first affidavit was executed by Mr. Haller, the plaintiff's president, in which he stated:

> She had a personal dislike of me and at one point stated that I was too aggressive and that as long as she was there, I would not get any contracts or words to that effect.

Haller Affidavit, ¶ 7.

The plaintiff's second affidavit was executed by Mr. Charles McCarville, a Government contract inspector at the Defense Construction Supply Center, in which he stated:

> Prior to the solicitation of competitive bids on Contract No. DLA 710–81–D–0006 for the reconditioning and "electro-velvet coating" of certain government owed [sic] banker-type partitions, I suggested to Donna Huff, a contracting officer for the United States Government,

that judging from the substandard work by L.D. Henry Company on the preceding contract, Kinetic Structures Corporation would do the best job because only Kinetic Structures Corporation had successfully completed the "electro-velvet" work. She was adamant that there were other companies in town that could perform the work besides Kinetic Structures Corporation and that she did not want to award any contract to Kinetic Structures Corporation because its President, J.R. Haller, was too aggressive.

McCarville Affidavit, ¶ 3. Further, Mr. McCarville, in paragraphs six and seven of his affidavit, stated:

> 6. I was the inspector for this job and 75% of the panels that J & B Painting Company, Inc. submitted were substandard. The government then terminated the contract with J & B Painting Company, Inc. and cancelled the project, despite the fact that Donna Huff was well aware that Kinetic Structures Corporation could satisfactorily complete the project.
>
> 7. Kinetic Structures Corporation was the sole bidder for solicitation DLA 710–81–B–0048. Although Donna Huff was well aware that Kinetic Structures Corporation could satisfactorily complete the job, the project was instead cancelled.

The plaintiff contends that these affidavits demonstrate that Ms. Huff lacked good faith in her dealings with the plaintiff's sole bid on solicitation '0048. Since "bad faith" raises an issue of fact that should be decided at trial, the plaintiff contends that the defendant's motion for summary judgment should not be granted. As already indicated, the Court does not agree.

To begin with, the Haller affidavit fails to raise a genuine issue of material fact as to Ms. Huff's bad faith. Specifically, the affidavit neglects to set forth the specific factual circumstances surrounding Ms. Huff's alleged statement of dislike for Mr. Haller. It is neither factually precise as to time, as to whom the statement was made, nor as to the accuracy of the context of what was said. In fact, the statement itself, qualified by the language "or words

to that effect," cannot be the basis for this Court's finding of a genuine issue of material fact. In defending against a motion for summary judgment, it is the party's responsibility to present clear and unambiguous material facts.

In addition, Mr. McCarville's affidavit merely indicates that Ms. Huff believed that several contractors in the geographical area could perform the work satisfactorily. Mr. McCarville has *not* stated, contrary to the plaintiff's assertions, that Ms. Huff *would not* award the contract to the plaintiff but, rather, that she "did not want to award" the contract to the plaintiff. This Court recognizes that individuals may not want to do something required by their employer; however, they still do what is required of them. Here, even assuming that Ms. Huff did not personally like Mr. Haller, the plaintiff has failed to present any evidence, apart from "naked" allegations, that Ms. Huff would have allowed this personal dislike for Mr. Haller to interfere with her responsibilities and duties as a Government contracting officer. As such, the plaintiff has failed to substantiate its claim of bad faith. In view of the strong presumptions of good faith attached to decisions of Government contracting officers, a plaintiff's merely alleging that a contracting officer "did not want to" award a contract to a particular bidder fails to sufficiently raise an issue of material fact which would defeat a defendant's motion for summary judgment. There is absolutely no evidence in either affidavit that would indicate that Ms. Huff would, in bad faith, refuse to award the contract to the plaintiff if the plaintiff had in fact presented a bid that was acceptable and consistent with procurement statutes and regulations.

In order to preserve the integrity of the competitive bidding process and to prevent the misapplication of public funds, the rejection of all submitted bids after opening is strongly discouraged. *In re Westinghouse Electric Corp.*, 54 Comp. Gen. 699, 75-1 CPD ¶ 112 (1975). The governing regulation, DAR 2-404.1, 32 C.F.R. § 2-404.1, dictates that, after the bids have been opened, an award must be made to the responsible bidder who submitted the lowest responsive bid, absent a compelling reason to reject all bids and cancel the solicitation. *See also Northern Virginia Van Co. v. United States*, 3 Cl.Ct. 237 (1983) (the large discrepancy between the plaintiff's bid and the Government's estimates provided a "compelling reason" to cancel the solicitation for "unreasonable prices" and thereby prevent "a misapplication of public funds," a fundamental concern justifying cancellation).

DAR 2-404.1(b), 32 C.F.R. § 2-404.1(b), provides a list of reasonable circumstances for canceling a solicitation after opening but before award. One of these circumstances arises when "all otherwise acceptable bids received are at unreasonable prices." DAR 2-404.1(b)(vi), 32 C.F.R. § 2-404.1(b)(vi). In determining whether a bid reflects an unreasonable price, a comparison with Government estimates is an acceptable means of making that determination. *See In re Stewart-Thomas Industries, Inc.*, B-196295, March 5, 1980, 80-1 CPD ¶ 175; *In re Jig Boring Specialties, Inc.*, B-192878, February 15, 1979, 79-1 CPD ¶ 189; *In re North American Signal Co.*, B-190972, May 19, 1978, 78-2 CPD ¶ 87.

Plaintiff was the sole bidder on solicitation '0048. Plaintiff's bid was in the amount of $197,853.44. The Government's original cost estimate was $136,797.75, based on a prototype procurement in 1981, and was later revised, by the Government's engineers, to approximately $148,000. As a result of the wide disparity between the Government's cost estimates and the plaintiff's bid, Ms. Huff requested and obtained a cost breakdown from the plaintiff. Based on all of these facts and figures, Ms. Huff determined that the plaintiff's bid was excessive and unreasonable.

On September 21, 1981, other DLA officials formally concurred with Ms. Huff's determination that solicitation '0048 should be canceled before award "due to excessive price quoted by sole bidder * * *." On September 25, 1981, the solicitation was

canceled for "unreasonable prices." There is no evidence, raising a genuine issue of material fact, that the reasonableness of Ms. Huff's determination was ever questioned by any of the Government's reviewing officials.

Further, the Office of the Comptroller General has rejected as "unreasonable" bids that are 24 percent (B–181057, July 23, 1974), 16 percent (36 Comp.Gen. 364 (1956)), or 13 percent (B–179926, Feb. 19, 1974) greater than the Government estimates or the lower nonresponsive bids. In 36 Comp. Gen. 364, 365 (1956), the Comptroller General stated that it "cannot, * * * consider the matter of competitive bidding for government contracts solely as a game, in which the contract must automatically go to the lowest bidder without regard to the reasonableness of his price * * *." *Accord, In re Stacor Corp.,* 57 Comp.Gen. 234 (1978). Although the holdings of the Comptroller General are not binding on this Court, the basic logic of his position is reasonable and persuasive.

■ It is thus clear to this Court that the contracting officer's decision to cancel solicitation '0048 was a rational and reasonable one. This Court, therefore, concludes that the plaintiff is not entitled to the equitable relief it has requested, reinstatement of the solicitation and award of the resulting contract to itself.

### 2. Bid Preparation Costs

■ Plaintiff has requested this Court to award it its bid preparation costs for both contract '0006 and solicitation '0048. In order to recover bid preparation costs, a plaintiff must show that the Government has breached its implied-in-fact contractual obligation to fully and fairly consider the plaintiff's bid.

■ This Court has long held to the view that there is an implied condition of every Government solicitation that each bid submitted will be fairly and honestly considered. *Heyer Products Co. v. United States, supra,* 135 Ct.Cl. at 69, 140 F.Supp. at 412. If an unsuccessful bidder can dem-onstrate that this obligation has been breached, this Court will allow recovery of his bid preparation costs. *Space Age Engineering, Inc. v. United States,* 4 Cl.Ct. 739, 741 (1984); *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428 (1984). *See also Burroughs Corp. v. United States,* 223 Ct.Cl. 53, 617 F.2d 590 (1980); *McCarty Corp. v. United States,* 204 Ct.Cl. 768, 499 F.2d 633 (1974); *Keco Industries, Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233 (1970). The standard of proof, however, is stringent. *Space Age Engineering, Inc. v. United States, supra,* 4 Cl.Ct. at 741; *Tidewater Management Services, Inc. v. United States,* 216 Ct.Cl. 69, 72, 573 F.2d 65, 67 (1978); *Keco Industries, Inc. v. United States, supra,* 203 Ct.Cl. at 573, 492 F.2d at 1204. In order to recover bid preparation costs, a contractor must present "clear and convincing proof" that the award of the contract to a particular bidder was arbitrary and capricious, thereby denying him a fair and impartial consideration of his bid. *Tidewater Management Services, Inc. v. United States, supra,* 216 Ct.Cl. at 73, 573 F.2d at 67; *Heyer Products Co. v. United States, supra,* 135 Ct.Cl. at 71, 140 F.Supp. at 414.

Judge Davis, in *Keco II,* enunciated the parameters of the bid preparation cost rule which govern the disposition of the instant case:

The ultimate standard is, as we said in *Keco Industries I, supra,* whether the Government's conduct was arbitrary and capricious toward the bidder-claimant. We have likewise marked out four subsidiary, but nevertheless general, criteria controlling all or some of these claims. One is that subjective bad faith on the part of the procuring officials, depriving a bidder of the fair and honest consideration of his proposal, normally warrants recovery of bid preparation costs. *Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409 (1956). A second is that proof that there was "no reasonable basis" for the administrative decision will also suffice, at least in many situations. *Continental Business Enterprises v. United States,* 196 Ct.Cl. 627, 637–38,

452 F.2d 1016, 1021 (1971). The third is that the degree of proof of error necessary for recovery is ordinarily related to the amount of discretion entrusted to the procurement officials by applicable statutes and regulations. *Continental Business Enterprises v. United States, supra,* 196 Ct.Cl. at 637, 452 F.2d at 1021 *Keco Industries, Inc. v. United States, supra,* 192 Ct.Cl. at 784, 428 F.2d at 1240. The fourth is that proven violation of pertinent statutes or regulations can, but need not necessarily, be a ground for recovery. *Cf. Keco Industries I, supra,* 192 Ct.Cl. at 784, 428 F.2d at 1240. The application of these four general principles may well depend on (1) the type of error or dereliction committed by the Government, and (2) whether the error or dereliction occurred with respect to the claimant's own bid or that of a competitor.

*Keco Industries, Inc. v. United States, supra,* 203 Ct.Cl. at 574, 492 F.2d at 1203–04.

Further, Judge Davis cautioned:

But if one thing is plain in this area it is that not every irregularity, no matter how small or immaterial, gives rise to the right to be compensated for the expense of undertaking the bidding process.

*Keco Industries, Inc. v. United States, supra,* 203 Ct.Cl. at 573, 492 F.2d at 1203. With these standards in mind, the Court can proceed to analyze the plaintiff's bid preparation costs contentions.

(a) Solicitation '0048

The plaintiff seeks an award of its bid preparation costs incurred in submitting a bid on solicitation '0048. As discussed above, the plaintiff has alleged the existence of the first *Keco II* criteria, subjective bad faith on the part of the procuring officials, in opposing the Government's motion for summary judgment. However, for the reasons set forth above, this Court has determined that the plaintiff's "naked" allegations of bad faith are insufficient to raise any genuine issues of material fact capable of defeating the Government's motion.

Therefore, absent the existence of any material evidence, rather than mere "naked" allegations that the Government's rejection of the plaintiff's bid was arbitrary, capricious, or in bad faith, the Government is entitled to the granting of its motion for summary judgment. *See Robert F. Simmons & Assoc. v. United States, supra,* 175 Ct.Cl. at 516, 360 F.2d at 965.

(b) Contract '0006

With respect to contract '0006, the plaintiff basically presents three points in support of its argument that it is entitled to bid preparation costs. First, the plaintiff argues that there was bad faith and/or negligence in the evaluation of its bid and the subsequent award of contract '0006 to the J & B Painting Company, Inc. Second, the plaintiff argues that there was bad faith in the termination of the J & B contract and the subsequent failure on the part of the contracting officer to award the plaintiff the remaining portion of contract '0006. Third, it alleges that the Government's violation of certain procurement regulations necessitates the award of bid preparation costs to the plaintiff. Unfortunately for the plaintiff, however, it has failed to support any of these allegations with the requisite factual material or legal analysis necessary to defeat the Government's motion for summary judgment.

This Court cannot find any support for the plaintiff's first contention that there was bad faith and/or negligence in the evaluation of its bid and the award of contract '0006 to J & B. J & B's bid on contract '0006 was the low bid out of the four bids submitted. Plaintiff's bid was the second lowest. J & B followed the Government's regulations and self-certified that it was a small business concern and that it was a regular dealer in the supplies offered as required under the Walsh-Healey Act, 41 U.S.C. § 35–45. The DCAS performed a pre-award survey in which no exception to the self-certification by J & B

was taken, found J & B to be a responsible bidder, and recommended the award of contract '0006 to it. Thereafter, the contracting officer, Mr. Miceli, awarded contract '0006 to J & B. The plaintiff has never alleged any bad faith whatsoever in regard to this Government contracting officer. The most the plaintiff has done in regard to the evaluation of the contract '0006 award is to allege that there may have been negligence on the part of the DCAS survey team that evaluated J & B's "responsibility." The law, however, does not allow an award of bid preparation costs based upon mere negligence. Specifically, *Keco II* states that:

> The mere failure to exercise due diligence in the appraisal of the advantageousness of a competitor's bid, when that omission amounts to simple negligence, is not a sufficient showing of arbitrary or capricious conduct to warrant recovery of bid preparation expenses. The Government's duty to exercise care in evaluating the "price and other factors" of a bid runs first to the proponent of that bid and to the public and its representatives, and only then to another bidder. The responsibility to the latter is too attenuated to justify assessing damages for simple negligence, especially in light of the broad discretion of procurement officials in that aspect of the bid process. Moreover, litigation which second-guesses bid determinations, through efforts to show ordinary lack of due care in appraising competing proposals, should not be encouraged where the award was rational and made in good faith. The interference from such suits, and their impact upon contracting activities, would exact too great a price in the procurement process.

*Keco Industries, Inc. v. United States, supra,* 203 Ct.Cl. at 579, 492 F.2d at 1206–07. *See also Burroughs Corp. v. United States, supra,* 223 Ct.Cl. at 69, 617 F.2d at 600. This Court finds, therefore, that the plaintiff has provided nothing more than mere "naked" allegations in regard to this contention.

Next, the plaintiff contends that there was bad faith in the termination of the J & B contract by the contracting officer and the subsequent failure by that contracting officer to award the plaintiff the remaining portion of contract '0006. While J & B's contract was terminated before completion, such termination is totally irrelevant to the essential question of whether the plaintiff's bid received full and fair consideration at the time contract '0006 was initially awarded. If anybody should be arguing bad faith in the termination of contract '0006, it should be J & B and not the plaintiff. In addition, the plaintiff has absolutely no right to assume that because it could complete the contract that the Government had the obligation to award it the remainder of contract '0006. The Government, of course, retains the discretion to deal with the problem of a terminated contract consistent with what it believes to be the public interest. The failure by the Government to award a completion contract to the plaintiff can in no way entitle the plaintiff to bid preparation costs on contract '0006.

Finally, the plaintiff contends that the Government's violation of its own procurement regulations confers on the plaintiff a *prima facie* right of recovery. Specifically, it points to the fourth general principle set out in *Keco Industries, Inc. v. United States, supra,* 203 Ct.Cl. at 574, 492 F.2d at 1204.

The violation of the procurement regulation at issue has been conceded by the Government. The violation involved the Government's failure to follow the DAR regulations in regard to a post-award protest. The violation arose *after* J & B had been awarded contract '0006. On April 7, 1981, the plaintiff filed a protest with DLA alleging that J & B was neither a manufacturer of, nor a regular dealer in, the materials or supplies called for by the contract, as required by the Walsh-Healey Act, 41 U.S.C. § 35–45.

Although the Walsh-Healey Act mandates that the contractor be either a manufacturer of, or a regular dealer in, the

supplies it uses for performance, DAR 1–905.4(d), 32 C.F.R. § 1–905.4(d), provides that:

The contracting officer shall accept the representation by the offeror that the firm is either a manufacturer or regular dealer pursuant to the requirements of the Walsh-Healey Public Contracts Act (Section XII, Part 6) unless—

\*    \*    \*    \*    \*    \*

(ii) a protest has been lodged pursuant to 12–604; \* \* \* or

(iv) a preaward investigation or survey of such offeror's operations is otherwise made to determine the technical and production capability, plant facilities and equipment, and subcontracting and labor resources of such offeror.

Where these conditions exist, the PCO shall determine the Walsh-Healey Act eligibility status of the offeror, based on available evidence, \* \* \*.

Here, J & B certified that it was a "regular dealer in the supplies offered." The Government's pre-award survey of J & B indicates that J & B represented itself as a regular dealer and that no exception was taken as to that representation.

■ As already indicated, Mr. Miceli awarded contract '0006 to J & B on April 1, 1981. Also, as indicated above, there was no evidence, prior to that date, that J & B was not eligible under the Walsh-Healey Act. To the contrary, the evidence demonstrated that J & B was eligible. Therefore, the decision of the Government contracting officer was neither irrational nor arbitrary and capricious.

On April 7, 1981, the plaintiff filed a protest of the award. However, Mr. Stewart, another DLA contracting officer, neglected to follow the protest procedures set out in DAR 12–604(c), 32 C.F.R. § 12–604(c). DAR 12–604(c), 32 C.F.R. § 12–604(c), provides:

When another offeror challenges the eligibility of the apparently successful offeror after award, the PCO [procuring contracting officer] shall notify the protestor and the contractor in writing that they may submit evidence concerning the matter to the PCO within 10 working days. The PCO shall review all available evidence, reach a decision, and forward the matter to DOL.

Here, Mr. Stewart neither provided the companies time to respond to the plaintiff's protest nor forwarded the matter to DOL. Mr. Stewart, however, denied the protest in a letter to the plaintiff dated April 22, 1981.

As a result, the plaintiff contends that the Government's omission is "a proven violation of pertinent statutes or regulations" and thus can be a ground for recovery under the fourth *Keco II* criterion.

■ The clear purpose of the time component contained in DAR 12–604(c), 32 C.F.R. § 12–604(c), is to allow interested parties to submit pertinent factual materials, within a time calculated to permit the correction of an egregious error in the procurement process, before those concerned have invested such an inordinate amount of time and funds in the procurement that they suffer irreparable economic injury. Here, although the plaintiff did not receive the requisite notice to submit evidence, it waited until July 1982—over fifteen months—to raise the issue for the first time before this Court. This Court finds that this was an excessive and unreasonable time for delay by the plaintiff, after the plaintiff received constructive notice of the violation in the form of Mr. Stewart's letter of April 22, 1981. The plaintiff has thus waived its right to complain at this point.

In addition, however, and perhaps more important, is the nature of the violation itself. This was not a violation of a procurement regulation that deprived the plaintiff of a full and fair consideration of its bid. It was a violation of a procedural procurement regulation which occurred after the completion of the award and evaluation process. This is hardly the type of violation that Judge Davis was contemplating when he explained that:

For instance, there would seem to be a strong presumption against entitlement

to bid preparation expenses where the allegation is that the Government incorrectly adjudged a competitor to be "responsible" prior to contract award. As we have noted, procurement officials have a great deal of discretion in making this determination (aside from a prior suspension or debarment), and some of the criteria are not readily susceptible to reasoned judicial review.

    \*      \*      \*      \*      \*      \*

Again, it may be that even a proven violation of some procurement regulation, in selecting the competitor, will not necessarily make a good claim. Not every regulation is established for the benefit of bidders as a class, and still fewer may create enforceable rights for the awardee's competitors.

*Keco Industries, Inc. v. United States, supra,* 203 Ct.Cl. at 577–78, 492 F.2d at 1205–06. Moreover, the plaintiff has not alleged any bad faith on the part of Mr. Stewart, the contracting officer, with regard to the violation. Therefore, this violation is clearly not the type of violation that will allow the plaintiff any recovery of his bid preparation costs.

It is thus clear that the plaintiff has failed to allege any matters that would cause this Court to deny the defendant's motion for summary judgment as to the plaintiff's bid preparation claim for contract '0006.

## CONCLUSION

Therefore, this Court concludes that the plaintiff has failed to establish the requisite arbitrary or capricious action on the part of the Government officials involved in the procurement of contract '0006 or solicitation '0048 to warrant a trial on the merits or relief in the Claims Court. The cancellation of solicitation '0048 was reasonable and rational such that no ground for equitable relief has been established. In regard to the plaintiff's demand for bid preparation costs for contract '0006 and solicitation '0048, notwithstanding the procedural violation involving plaintiff's protest of contract '0006, there is no reasonable basis on which to grant plaintiff his desired relief.

For the reasons described above, defendant's motion for summary judgment is granted and plaintiff's complaint is to be dismissed.